YAZOO & MISSISSIPPI VALLEY R. R. Co. *v.* HULLUM.

[80 South. 645, Division B.]

1. MASTER AND SERVANT. *Injuries to servant. Assumption of risks.*

It is elementary law that employees assume the obvious risks incident to their employment.

2. SAME.

Under the facts in this case which was a suit by a railroad detective against the company for injuries sustained by being shot by unknown parties, the court held, that appellee accepted an extremely hazardous employment; that the danger was obvious; that he knew, or ought to have known, that what ·did happen was not improbable and that he assumed the risks of his employment.

APPEAL from the circuit court of Warren county. HON. E. L. BRIEN, Judge.

Suit by Noble M. Hullum against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Hirsch, Dent & Landeau, H. D. Minor* and *Chas. N. Burch,* for appellant.

*Henry & Canizaro* and *Anderson, Voller & Kelly,* for appellee.

Cook, P. J., delivered the opinion of the court.

The appellee, plaintiff in the circuit court of Warren county, secured a judgment against the appellant for the sum of thirty-five thousand dollars. Appellee was employed by the railroad company as a watchman on moving freight trains, and in the yards of the company from Baton Rouge and Kenner Junction, inclusive, for the purpose of protecting the trains from thieves and burglars. Previous to this employment, plaintiff had been a guard in a convict camp and also had been employed by defendant as a guard in the yards of defendant at Vicksburg.

It appears that plaintiff knew, or had been told, that there had been frequent train robberies, and it was his duty to protect the trains from robbers.

While engaged in this employment, and after he had been in the service for three weeks, he was fired upon by some unknown parties at Burnside, La., just as the train was stopping. He was armed with a pistol and returned the fire. It appears that the plaintiff was between two cars when the train pulled into Burnside; that he sought this position for the purpose of concealment, and for the purpose of protecting the trains from burglars.

The evidence shows, however, that the burglars were also on the lookout for detectives, saw appellee before he saw them, and opened fire.

It appears to us that any ordinarily intelligent man, accepting the employment appellee accepted, would necessarily appreciate that he was engaging in a hazardous business. He at least knew that a pistol would be needed in his job and acted accordingly.

His theory upon which a recovery was obtained seems to be that, while he appreciated the dangers ordinarily connected with the employment, these were extraordinary conditions known to his employers, but unknown to him when he accepted employment.

The record discloses that the appellee was a young man, only twenty-six years of age, and as his age was somewhat stressed, we conclude that his age alone was believed to be a factor in the case. We find ourselves unable to accept this suggestion in the absence of any proof that appellee was not a normal man of that age.

The main contention here to justify the judgment obtained in the trial court is based upon evidence disclosing the fact that prior to his employment several negro employees on the freight trains of appellant had been shot. The plaintiff testified that he was not aware of these shootings when he was employed. The defendant railroad company did know these facts and did not inform the plaintiff of these "extrahazardous conditions."

The evidence along this line shows that for some unknown reason colored employees alone were the victims of these attacks. In fact, the evidence shows that it was the general opinion that negroes were singled out for slaughter.

However, it also appears that the previous shootings had not occurred within the limits of the territory to which appellee's activities were confined.

Giving full value to all of the evidence, we find that the appellee accepted an extremely hazardous employment; that the danger was obvious; and that this plaintiff knew, or ought to have known, that what did happen was not improbable. His actions speak louder than words; he was prepared, but the enemy got "the drop" on him.

Appellee admits that his employment carried with it obvious dangers, but he does contend that it was the duty of his master to inform him that a number of negro employees had been shot in the recent past.

In the first place, it is more than probable that the warfare was confined to the colored race; this was the opinion of those familiar with the conditions at the front. The probable inference from the facts would

suggest a feud between the white and colored employees of the railroad company, with the whites on the offensive.

It is elementary law that employees assume the obvious risks incident to their employment, and some of the courts go to the extent of holding that this assumption of risk is a part of the contract. We do not understand that plaintiff denies the general rule of assumption of risk, but he does contend that the circumstances show that the danger was not obvious in his case, because he was not put in possession of the facts known to his employer. As we interpret the facts, the contention of the plaintiff is unsound and unsupported by the evidence.

*Reversed and dismissed.*